UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF WISCONSIN

In re: James P. Wagner, Sr.,

Debtor.

Case No. 19-25669-beh
(Chapter 7)

**UNITED STATES TRUSTEE'S MOTION TO DISMISS PURSUANT TO
11 U.S.C. § 707(b)(1) BASED ON 11 U.S.C. § 707(b)(3)**

United States Trustee Patrick S. Layng, by Attorney Laura D. Steele, moves to dismiss this case under 11 U.S.C. § 707(b)(1) based on the totality of the circumstances under 11 U.S.C. § 707(b)(3). In support of this motion, the United States Trustee states:

### I. SUMMARY OF THE MOTION

1. James P. Wagner, Sr. ("Debtor") commenced this case by filing a voluntary petition under Chapter 7 of the Bankruptcy Code on June 10, 2019 (petition date).

2. The Debtor indicated that his debts are primarily consumer debts.

3. A review of the Debtor's actual income and draws from his business, prepetition spending, and schedule J expenses demonstrates there is sufficient monthly income available to repay creditors and that this case should be dismissed for abuse.

### II. JURISDICTION

4. The Court has jurisdiction in this matter under 28 U.S.C. §§ 1334(a) and (b), 28 U.S.C. §§ 157(a) and (b)(1), and 28 U.S.C. § 151. This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A) and (B). The United States Trustee consents to final judgment of the Court.

Attorney Laura D. Steele
Office of the United States Trustee
517 East Wisconsin Avenue, Suite 430
Milwaukee, WI 53202
(414) 297-4499   Fax (414) 297-4478

5. The United States Trustee has standing to file a motion under 11 U.S.C. § 707(b) if he finds that the granting of relief would be an abuse of the provisions of this chapter.

6. The extended deadline to file a motion under § 707(b) and § 727 is October 31, 2019.

7. This Motion is timely filed.

### III. FACTS

8. The Debtor is a licensed optometrist, who has operated Dr. Wagner's Southridge Optical LLC (the LLC) since 2002.

9. The Debtor is the sole member of the LLC.

*Schedule I*

10. The Debtor discloses that he earns $4,000 per month as a distribution from the LLC on his schedule I.

11. The Debtor further discloses $4,000 in monthly income on his Means Test, for annual income for his household of one of $48,000.

12. The Debtor's statement of financial affairs discloses gross income of $16,000 from January 1, 2019 to the June petition date. At his Rule 2004 examination, the Debtor testified that the gross income figure was an "estimate."

13. The Debtor does not disclose that in addition to the $4,000 distribution, numerous personal expenses are paid by the LLC on his behalf from its operating account at Associated Bank x3037 (the LLC Account). The Debtor also did not disclose the LLC Account within his schedules.

14. For example, in May 2019, the Debtor caused a $15,700 check identified as check No. 2772 to be withdrawn from the LLC Account. The check was applied to pay down his

2

personal Chase Sapphire Reserve Card account x5626 (Credit Card x5626). The charges on Credit Card x5626 include international travel expenses for food, airfare, and hotels and do not include expenses of the LLC.

15. The Debtor discloses three car payments on his schedule J in the amounts of $487, $487 and $838. The LLC Account statement demonstrates that these car payments are made directly from the LLC Account, rather than from funds held by the Debtor.

16. Finally, the Debtor discloses that he agreed to pay his bankruptcy counsel $6,335 for the filing of this case, $4,335 of which was paid prepetition, and the remainder paid post-petition. The Debtor's bankruptcy counsel fees were paid from his LLC. The Debtor testified that he has caused additional funds to be paid to his bankruptcy counsel post-petition. Additional post-petition fees have not been disclosed to the Court as required by Fed. R. Bankr. P. 2016(b).

17. In light of the personal expenses paid directly by the LLC on the Debtor's behalf, it appears that the Debtor's income and financial resources exceed the $4,000 distribution reported on his schedule I and Means Test. Transactions from the LLC Account (including the $15,700 personal credit card payment, $6,335 in bankruptcy attorney fees, and estimated $10,800 in total car payments in the six months before the petition date) also call into doubt the veracity of the Debtor's representation that his gross income for the six months before the petition date was $16,000.

*Schedule J*

18. On schedule J, the Debtor discloses total expenses of $10,013. While the Debtor does not disclose any dependents, the Debtor testified at this Rule 2004 examination that he provides financial support to his grandchild and two adult children.

3

19. These Debtor's expenses do not include any expenses for rent or mortgage. Rather, the Debtor testified at his Rule 2004 exam that he resides with his mother.

20. The Debtor's monthly expenses do include nearly $1,800 for payments on three vehicles. However, as discussed above, payments for these vehicles appear to be made directly from funds of the LLC rather than funds of the Debtor.

21. The Debtor's monthly expenses further include a $6,600 domestic support obligation. While the Debtor deducts this expense on schedule J, the Debtor admits that he is not current on the domestic support obligation, which is the subject of a pending adversary proceeding before the Court. *See Wagner v. Otis* (Bankr. E.D. Wis. Case No. 19-02131). While the Debtor has not been paying this obligation, the Debtor discloses on schedule AB that he has no cash on hand and holds only $225 in a Chase Bank checking account.

*Prepetition Spending*

22. The United States Trustee requested and obtained a Rule 2004 order requiring the Debtor to produce credit card statements.

23. The Debtor produced credit card statements for his personal Chase Sapphire Reserve Credit Card x5626.

24. The Credit Card x5626 statements reflect $18,614.88 in charges for April and May 2019. Among the charges are:

   a. $15,688.05 on May 9, 2019 for family law firm Clark & Steiner LTD;

   b. $1,393.33 on May 14, 2019 for airfare; and

   c. $1,005 on April 26, 2019 for a hotel stay in Paraguay.

25. According to schedule EF, the Debtor seeks to discharge the unpaid debt on the Chase Sapphire Reserve Credit Card x5626 in the amount of $18,217.42. While schedule EF

4

represents that the balance was incurred "over time," it appears the balance was incurred within nearly a month of his petition date.

26. The credit card statements demonstrate that the Debtor had paid off the previous balance in full by making a payment of $15,700 on or about May 7, 2019, from funds held within the LLC's bank account.

Credit Card x5626 Statement for April 20, 2019 to May 19, 2019:

## ACCOUNT SUMMARY

| | |
|---|---|
| Account Number: ████████5628 | |
| Previous Balance | $15,132.60 |
| Payment, Credits | -$15,700.00 |
| Purchases | +$18,614.88 |
| Cash Advances | $0.00 |
| Balance Transfers | $0.00 |
| Fees Charged | $0.00 |
| Interest Charged | +$169.94 |
| **New Balance** | **$18,217.42** |
| Opening/Closing Date | 04/20/19 - 05/19/19 |
| Credit Access Line | $19,000 |
| Available Credit | $782 |
| Cash Access Line | $3,800 |
| Available for Cash | $782 |
| **Past Due Amount** | **$0.00** |
| **Balance over the Credit Access Line** | **$0.00** |

LLC Account x3037 May 2019 statement:

| Checks Paid | | | | | |
|---|---|---|---|---|---|
| DATE | CHECK# | AMOUNT | DATE | CHECK# | AMOUNT |
| 05/01/2019 | 2754 | 1,488.98 | 05/09/2019 | 2780 | 556.49 |
| 05/01/2019 | 2762 * | 1,300.00 | 05/09/2019 | 2781 | 600.00 |
| 05/06/2019 | 2763 | 1,500.00 | 05/13/2019 | 2782 | 1,500.00 |
| 05/07/2019 | 2764 | 1,125.00 | 05/20/2019 | 2783 | 300.00 |
| 05/10/2019 | 2765 | 487.12 | 05/16/2019 | 2784 | 528.00 |
| 05/09/2019 | 2766 | 487.86 | 05/14/2019 | 2785 | 1,300.00 |
| 05/09/2019 | 2767 | 400.00 | 05/21/2019 | 2786 | 1,500.00 |
| 05/08/2019 | 2768 | 100.00 | 05/15/2019 | 2787 | 700.00 |
| 05/08/2019 | 2769 | 837.55 | 05/15/2019 | 2788 | 700.00 |
| 05/09/2019 | 2770 | 2,053.54 | 05/17/2019 | 2789 | 300.00 |
| 05/09/2019 | 2771 | 120.00 | 05/28/2019 | 2790 | 87.50 |
| **05/07/2019** | **2772** | **15,700.00** | 05/28/2019 | 2791 | 575.00 |
| 05/10/2019 | 2773 | 364.88 | 05/29/2019 | 2792 | 435.00 |
| 05/10/2019 | 2774 | 610.39 | 05/22/2019 | 2793 | 2,500.00 |
| 05/13/2019 | 2775 | 683.97 | 05/28/2019 | 2794 | 1,500.00 |
| 05/10/2019 | 2776 | 1,922.97 | 05/24/2019 | 2795 | 807.35 |
| 05/10/2019 | 2777 | 843.68 | 05/28/2019 | 2796 | 903.62 |
| 05/10/2019 | 2778 | 378.33 | 05/28/2019 | 2797 | 1,009.60 |
| 05/16/2019 | 2779 | 307.55 | 05/29/2019 | 2798 | 2,545.82 |

27. The Credit Card x5626 statement for March and April 2019 includes a previous balance of $15,470, payments of $7,000, and purchases of $6,356.20.

28. The $6,356.20 in purchases for the March and April statement include:

   a. $3,924.25 for family law firm Clark & Steiner LTD on April 9, 2019; and

   b. $1,631 for airline tickets on April 10, 2019.

29. The Credit Card x5626 statement for March and April 2019 reflects that a total payment of $7,000 was made in two installments of $3,000 on or about March 26, 2019, and $4,000 on or about April 10, 2019.

**PAYMENTS AND OTHER CREDITS**

| | | |
|---|---|---|
| 03/26 | Payment Thank You-Branch Check | -3,000.00 |
| 04/10 | Payment Thank You-Branch Check | -4,000.00 |

30. LLC Account x3037 statement for March and April reflect corresponding check withdrawals:

LLC Account x3037 April 2019 statement:

6

**Checks Paid**

| DATE | CHECK# | AMOUNT | DATE | CHECK# | AMOUNT |
|---|---|---|---|---|---|
| 04/01/2019 | 2704 | 2,000.00 | 04/15/2019 | 2729 | 2,000.00 |
| 04/01/2019 | 2705 | 2,000.00 | 04/15/2019 | 2730 | 467.61 |
| 04/02/2019 | 2709 * | 1,600.00 | 04/25/2019 | 2731 | 616.74 |
| 04/01/2019 | 2710 | 458.11 | 04/12/2019 | 2732 | 720.22 |
| 04/01/2019 | 2711 | 608.41 | 04/15/2019 | 2733 | 2,175.42 |
| 04/01/2019 | 2712 | 693.19 | 04/15/2019 | 2734 | 808.52 |
| 04/02/2019 | 2713 | 2,175.42 | 04/15/2019 | 2735 | 295.54 |
| 04/01/2019 | 2714 | 839.55 | 04/16/2019 | 2736 | 713.97 |
| 04/02/2019 | 2715 | 386.94 | 04/16/2019 | 2737 | 583.81 |
| 04/02/2019 | 2716 | 1,044.46 | 04/17/2019 | 2738 | 500.00 |
| 04/01/2019 | 2717 | 512.07 | 04/16/2019 | 2739 | 100.00 |
| 04/11/2019 | 2718 | 9,000.00 | 04/16/2019 | 2740 | 1,116.40 |
| 04/03/2019 | 2719 | 1,500.00 | 04/16/2019 | 2741 | 1,432.84 |
| 04/03/2019 | 2720 | 300.00 | 04/16/2019 | 2742 | 243.30 |
| 04/03/2019 | 2721 | 2,745.00 | 04/19/2019 | 2743 | 2,000.00 |
| 04/08/2019 | 2722 | 1,500.00 | 04/15/2019 | 2744 | 500.00 |
| 04/02/2019 | 2723 | 60.00 | 04/15/2019 | 2745 | 950.00 |
| 04/11/2019 | 2724 | 487.12 | 04/17/2019 | 2746 | 1,500.00 |
| 04/10/2019 | 2725 | 487.86 | 04/22/2019 | 2747 | 2,000.00 |
| 04/10/2019 | 2726 | 1,837.55 | 04/26/2019 | 2748 | 14,178.96 |
| 04/19/2019 | 2727 | 60.00 | 04/29/2019 | 2749 | 500.00 |
| 04/11/2019 | 2728 | 4,000.00 | 04/23/2019 | 2750 | 550.00 |

LLC Account x3037 April 2019 statement:

**Checks Paid**

| DATE | CHECK# | AMOUNT | DATE | CHECK# | AMOUNT |
|---|---|---|---|---|---|
| 03/01/2019 | 2640 | 161.00 | 03/19/2019 | 2676 | 971.65 |
| 03/01/2019 | 2643 * | 100.00 | 03/28/2019 | 2677 | 397.68 |
| 03/08/2019 | 2644 | 174.26 | 03/21/2019 | 2678 | 1,360.45 |
| 03/01/2019 | 2645 | 160.00 | 03/15/2019 | 2679 | 736.82 |
| 03/04/2019 | 2646 | 651.29 | 03/25/2019 | 2680 | 14,329.98 |
| 03/01/2019 | 2648 | 586.11 | 03/25/2019 | 2682 * | 935.00 |
| 03/01/2019 | 2650 * | 473.15 | 03/19/2019 | 2683 | 837.55 |
| 03/15/2019 | 2651 | 880.30 | 03/25/2019 | 2684 | 500.00 |
| 03/01/2019 | 2652 | 769.53 | 03/19/2019 | 2685 | 440.00 |
| 03/04/2019 | 2653 | 2,175.42 | 03/21/2019 | 2686 | 651.29 |
| 03/01/2019 | 2654 | 901.50 | 03/20/2019 | 2687 | 80.00 |
| 03/01/2019 | 2655 | 273.34 | 03/20/2019 | 2688 | 100.00 |
| 03/06/2019 | 2656 | 1,360.45 | 03/22/2019 | 2689 | 981.18 |
| 03/06/2019 | 2657 | 1,360.45 | 03/26/2019 | 2690 | 300.00 |
| 03/08/2019 | 2658 | 14,178.96 | 03/25/2019 | 2691 | 1,500.00 |
| 03/11/2019 | 2659 | 487.12 | 03/20/2019 | 2692 | 1,525.00 |
| 03/11/2019 | 2660 | 487.86 | 03/20/2019 | 2693 | 500.00 |
| 03/06/2019 | 2661 | 2,500.00 | 03/20/2019 | 2694 | 1,000.00 |
| 03/06/2019 | 2662 | 1,500.00 | 03/22/2019 | 2695 | 296.00 |
| 03/11/2019 | 2663 | 1,000.00 | 03/25/2019 | 2696 | 271.00 |
| 03/11/2019 | 2665 * | 600.00 | 03/22/2019 | 2697 | 509.00 |
| 03/11/2019 | 2666 | 2,300.00 | 03/25/2019 | 2698 | 367.50 |
| 03/13/2019 | 2667 | 2,500.00 | 03/28/2019 | 2699 | 184.00 |
| 03/13/2019 | 2668 | 2,150.00 | 03/22/2019 | 2700 | 29.00 |
| 03/13/2019 | 2669 | 2,000.00 | 03/26/2019 | 2701 | 105.00 |
| 03/13/2019 | 2670 | 1,500.00 | 03/27/2019 | 2702 | 375.00 |
| 03/18/2019 | 2671 | 1,500.00 | 03/28/2019 | 2703 | 650.00 |
| 03/18/2019 | 2672 | 412.46 | 03/27/2019 | 2706 * | 2,650.00 |
| 03/18/2019 | 2673 | 621.15 | 03/27/2019 | 2707 | 3,000.00 |
| 03/18/2019 | 2674 | 1,770.79 | 03/27/2019 | 2708 | 1,500.00 |
| 03/19/2019 | 2675 | 2,545.82 | | | |
| *Indicates a check number is missing from sequence | | | **TOTAL** | | **$84,164.06** |
| | | | **TOTAL # OF ITEMS** | | **61** |

31. The February and March 2019 statements further include purchases totaling $3,757. Purchases include expenses for international hotels, restaurants and airfare.

32. The Debtor also held a personal Chase Sapphire credit card account x2021 (Credit Card x2021).

7

33. The Debtor incurred charges of $1,617 on Credit Card x2021 in April 2019, including $937.50 for a Florida timeshare.

34. In March 2019, the Debtor incurred charges on Credit Card x2021 of $2,555.26, including the $937.50 Florida timeshare, and $689 charge to Karl Knauz BMW.

35. Statements for Credit Card x2021 disclose a balance of $19,090.27 as of May 1, 2019.

36. The Debtor did not disclose Credit Card x2021 within his schedule EF.

37. The Debtor did disclose the $19,894.38 debt owed to Chase Sapphire Reserve account x3064 (Credit Card x3064) on schedule EF.

38. Statements for Credit Card x3064 indicate $1,231.53 in purchases for May 2019, including international charges, Netflix and Uber Eats.

39. The Debtor's LLC further held a credit card with US Bank, account x2529.

40. The Debtor used the US Bank credit card for personal expenses, including nearly $1,700 in airfare expenses in April 2019.

41. The statement for January 2019 indicates total purchases of $4,744, including $467 in charges at Nordstrom, $157 at Saks Fifth Avenue, and $960.28 at a Colombian jewelry store, Joyeria Caribe. The Debtor disclosed on his schedule AB that he does not own any jewelry. The Debtor did not disclose any gifts of jewelry on his statement of financial affairs.

42. Under the totality of the circumstances, and after considering all of the Debtor's actual financial circumstances, the Debtor appears to have the ability to repay creditors. Therefore, the case should be dismissed as an abuse of the bankruptcy system under 11 U.S.C. § 707(b)(3).

## III. LAW AND ARGUMENT

### Totality of the Circumstances Under 11 U.S.C. § 707(b)(3)(B)

43. In considering whether the granting of relief would be an abuse in a case in which the presumption of abuse does not arise or is rebutted, the court shall consider whether the debtor filed the petition in bad faith, or the totality of the circumstances of the debtor's financial situation demonstrates abuse. 11 U.S.C. §§ 707(b)(3)(A) and (B).

44. The "totality of the circumstances test," adopted by BAPCPA, derives from the Fourth Circuit's decision in *Green v. Staples (In re Green),* 934 F.2d 568, 572 (4th Cir.1991). In that decision, the Fourth Circuit held that in addition to the debtor's ability to fund a Chapter 13 plan, the following non-exclusive factors should be considered:

(1) Whether the bankruptcy petition was filed because of sudden illness, calamity, disability, or unemployment;

(2) Whether the debtor incurred cash advances and made consumer purchases far in excess of his ability to repay;

(3) Whether the debtor's proposed family budget is excessive or unreasonable;

(4) Whether the debtor's schedules and statement of current income and expenses reasonably and accurately reflect the true financial condition; and

(5) Whether the petition was filed in good faith.

45. The Fourth Circuit panel explained that "exploring these factors, as well as the relation of the debtor's future income to his future necessary expenses, allows the court to determine more accurately whether the particular debtor's case exemplifies the real concern behind Section 707(b): abuse of the bankruptcy process by a debtor seeking to take unfair advantage of his creditors." *Id.*

9

46. Here, application of the *Green* factors to the Debtor's circumstances supports a finding that this case is an abuse and must be dismissed.

47. First, the Debtor's case was not filed due to a sudden illness, calamity, disability, or unemployment. Rather, the Debtor filed in response to an unfavorable marital settlement agreement. At his Rule 2004 examination, the Debtor disclosed his intention to wind up his LLC and to look for alternative employment. The Debtor, a highly educated professional, has not averred that his financial circumstances will be harmed by this transition.

48. Second, it appears the Debtor incurred cash advances and made consumer purchases far in excess of his ability to repay. For example, within nearly a month of his petition date, the Debtor incurred credit card charges exceeding $18,000, which he now seeks to discharge in this case.

49. Third, the Debtor's proposed family budget on Schedule J is excessive or unreasonable. The most glaring example of this is the Debtor's $1,800 in vehicle payments for three vehicles, one of which is driven by an adult child. While the Debtor may wish to support his adult children outside of bankruptcy, supporting adult children while not paying creditors is an abuse of Chapter 7. *In re Van Beckum*, Case. No. 07-28650-svk (Bankr. E. D. Wis. 2008); *In re Haar*, 373 B.R. 493 (Bankr. N.D. Ohio 2007) (expenses for maintenance of two cars and cell phones for debtors' adult daughters were not appropriate allocation of debtor's financial resources); *In re Pfahler,* 2007 WL 2156401 (Bankr. N.D. Ohio 2007) (finding abuse where debtor had stable employment and income and was spending $350 per month for the support of his college-age son) (citations omitted).

50. Fourth, the Debtor's schedules and statement of current income and expenses do not reasonably and accurately reflect his true financial condition. As demonstrated above, the

10

Debtor reports that he receives a $4,000 monthly distribution from his LLC. However, the Debtor does not include or disclose that the LLC directly pays the Debtor's personal expenses—including his personal credit cards, vehicles, and bankruptcy attorney fees.

51. Fifth, when the Debtor's circumstances are considered in total, it does support a finding that this case was filed in good faith. *Waites v. Braley*, 110 B.R. 211, 217 (E.D. Va. 1990) (holding that neither bad faith nor fraud is an element required for a finding of substantial abuse). Rather, the Debtor appears to have filed this case in an attempt to obtain a 'head start' rather than the 'fresh start' envisioned in Chapter 7. *Id.* at 215.

## IV. CONCLUSION

WHEREFORE, the United States Trustee prays that the Court dismiss the case pursuant to 11 U.S.C. § 707(b)(1) and grant such other and further relief as the Court deems just and equitable.

DATED: October 31, 2019.

    Respectfully submitted,

    PATRICK S. LAYNG
    United States Trustee

---

    LAURA D. STEELE
    Attorney for the United States Trustee